SEALED



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA *Ex rel.* AJ FREIGHT SERVICES, INC.<br><br>*Plaintiff/Relator*,<br><br>L.K. ALUMINUM LLC, FUNDICIONES INDUSTRIALES S.A., ANTONIO KOZHAYA JORGE, IGNACIO A KOZHAYA ABUHAYAR, JACINTO V KOZHAYA, ANDRES L KOZHAYA, AND GONZALO M KOZHAYA.<br><br>*Defendants.* | Civil Action No. _____<br><br>*SEALED UNDER 31 U.S.C. § 3730(b)*<br><br>*COMPLAINT AND JURY DEMAND*<br><br>*DO NOT PLACE IN PRESS BOXES*<br><br>*DO NOT POST ONLINE*<br><br>*DO NOT MAKE PUBLICLY AVAILABLE* |

## QUI TAM COMPLAINT

The United States of America, by and through *qui tam* relator, AJ Freight Services, Inc., by and through its undersigned counsel, brings this action under 31 U.S.C. §§ 3729-32 (The "False Claims Act") to recover from L.K. Aluminum LLC., Fundiciones Industriales S.A., Antonio Kozhaya Jorge, Ignacio A Kozhaya Abuhayar, Jacinto V Kozhaya, Andres L Kozhaya, and Gonzalo M Kozhaya for all damages, penalties, and other remedies available under the False Claims Act on behalf of the United States and itself and would show unto the Court the following:

1

## I. PARTIES

1. Relator AJ Freight Services, Inc. ("AJ" or "Relator") is a corporation duly organized and existing under the laws of the state of Florida with its principal place of business located at 4155 S.W. 130 Ave., Suite #211, Miami, FL 33175.

2. Defendant L.K. Aluminum LLC ("LKA") is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 8870 NW 102nd Street, Medley, FL 33178.

3. Defendant Fundiciones Industriales S.A. ("FISA") is a company organized and existing under the laws of Ecuador with its principal place of business located at Escobedo 1402 y Luque, Guayaquil, Ecuador.

4. Defendant Antonio Kozhaya Jorge is a resident of Florida. He is the General Manager of FISA and a member of LKA. He may be served with process at 1627 Brickell Ave. Miami, FL 33129 or wherever he may be found.

5. Defendant Ignacio A Kozhaya Abuhayar is a resident of Florida. He is an officer of FISA and a member of LKA. He may be served with process at 3201 NE 183rd St. Aventura, FL 33160 or wherever he may be found.

6. Defendant Jacinto V Kozhaya (A.K.A. Jacinto V Kozhaya Simon)[1] is a resident of Florida. He is the President of FISA and a member of LKA. He may

---

[1] Florida Secretary of State shows his name as Jacinto V Kozhaya. Ecuadorian business registry shows his name as Jacinto V Kozhaya Simon.

be served with process at 3201 NE 183rd St. Aventura, FL 33160 or wherever he may be found.

7. Defendant Andres L Kozhaya is a resident of Florida. He is an officer of FISA and a member of LKA. He may be served with process at 3201 NE 183rd St. Aventura, FL 33160 or wherever he may be found.

8. Defendant Gonzalo M Kozhaya is a resident of Florida. He is an officer of FISA and a member of LKA. He may be served with process at 3201 NE 183rd St. Aventura, FL 33160 or wherever he may be found.

9. Defendants Antonio Kozhaya Jorge, Ignacio A Kozhaya Abuhayar, Jacinto V Kozhaya, Andres L Kozhaya, and Gonzalo M Kozhaya are members of the Kozhaya family and hereinafter referred to "Kozhaya."

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over the claims alleged in this Complaint under 28 U.S.C. §§ 1331 (federal question), 1345 (United States as Plaintiff) and 31 U.S.C. § 3732(a) (False Claims Act).

11. The Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because one or more of the Defendants can be found, reside, and/or transact business in this District. 31 U.S.C. 3732(a) further provides for nationwide and international service of process.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (3), and 31 U.S.C. § 3732(a) because one or more of the Defendants can be found in and transact business within this District. Venue is also proper because LKA and FISA import goods through the ports of Miami and Port Everglades, located in the Southern District of Florida, therefore some of the acts proscribed in 28 U.S.C. § 3729 occurred in this District.

13. Upon information and belief, this Complaint is not based on the facts underlying any pending related *qui tam* action, within the meaning of the False Claims Act's first-to-file rule, 31 U.S.C. § 3730(b)(5).

14. This action is not precluded by any provisions of the False Claims Act's jurisdiction bar, 31 U.S.C. § 3730(e) *et seq.*

    a. Upon information and belief, this Complaint is not based upon allegations or transactions that are the subject of a civil suit or an administrative civil money penalty proceeding in which the United States is already a party. 31 U.S.C. §3730(e)(3).

    b. Upon further information and belief, there has been no "public disclosure" of key facts alleged herein regarding Relator's discovery and investigation of the fraud. Moreover, Relator is an "original source" of information as defined by 31 U.S.C. §3730(e)(4)(B) of the False Claims Act. Relator, AJ, is the original source of and has direct

and independent knowledge of all publicly disclosed information that the allegations herein are based upon. Relator has personally gathered all the documentation substantiating the allegations herein. Additionally, it has voluntarily provided all such information to the Government prior to the filing of this action.

## II. BRIEF SUMMARY OF DEFENDANTS' VIOLATION(S) OF THE FALSE CLAIMS ACT

15. FISA is a pan-american provider of aluminum extrusions. FISA has worked together with LKA and Kozhaya in a long-running and illegal scheme to underpay duties on imports of aluminum profiles imported from Ecuador. Their unlawful actions have caused the United States to sustain millions of dollars in damages which will continue to accrue unless action is taken to stop their fraud.

16. As described below, since at least 2016, and continuing through the present, FISA, LKA and Kozhaya have been working together to violate the reverse false claims provision of the False Claims Act by knowingly evading or conspiring to evade their obligations to pay applicable import duties on aluminum products. They do so through (1) FISA's emission of false invoices that reflect a lower value for the merchandise than the amount FISA would sell to unrelated parties, and (2) false statements that include the nondisclosure of the relationship between FISA and LKA.

17. FISA and LKA are related entities pursuant to 19 U.S.C. § 1401a(g)(1) because Jacinto Vicente Kozhaya, the principal of FISA, is a member of LKA and is related to other members of LKA as they are members of the Kozhaya family.

18. Based on information and belief LKA purchases all of its imported merchandise exclusively from FISA. The two entities work together to evade paying the applicable import duties. This results in an unfair advantage for LKA in the domestic market when compared to its competitors and, more importantly, thwarts the U.S. Government of an estimated hundreds of millions of dollars it is lawfully owed.

### III. THE FEDERAL FALSE CLAIMS ACT

19. The False Claims Act ("FCA"), originally enacted in 1863, was substantially amended in 1986 by the False Claims Amendments Act, Pub. L. 99-562, 100 Stat. 3153, to enhance the Government's ability to recover losses as a result of fraud. Among other things, the amendments created incentives to encourage individuals with knowledge of fraud against the United States to disclose the information without fear of reprisals or Government inaction and to encourage the private bar to commit resources to prosecuting fraud on the Government's behalf. According to the Supreme Court, the FCA is intended to reach all types of fraud, without qualification, that might result in financial loss to

the Government. The FCA, as amended, includes a reverse false claims provision that imposes liability on a party that, by false statement, seeks to conceal, avoid, or decrease a precise, preexisting obligation to pay the United States. 31 U.S.C. § 3729(a)(1)(G).

20. The FCA provides that any person who knowingly makes, uses, or causes to be made or used false records and statements to decrease its obligations to the Government is liable for a civil penalty ranging from $5,000 up to $10,000 (as of the filing date of this Complaint) for each such violation, i.e., for every misdeclared line item on each entry filed with U.S. Customs and Border Protection ("CBP"), plus three times the amount of the damages sustained by the Federal Government.

## IV. THE APPLICATION OF THE FCA TO THE TARIFF ACT OF 1930

21. Under customs regulations, importers have an existing, non-contingent, and nondiscretionary liability for customs duties. See, e.g., 19 C.F.R. §§ 141.4, 159.2 (requiring entry and liquidation of imported merchandise); 19 U.S.C. § 1503 (assessment of duties on imports is generally based on the appraised value of the imported goods as determined upon liquidation). Such liability arises immediately and automatically upon the importation of goods into the United States. 19 C.F.R. § 141.1 (b)(1). Generally, the importer is required to deposit estimated duties with CBP at the time of entry. 19 U.S.C. § 1505; 19 C.F.R.

§ 141.101. The amount of customs duty owed is equal to the value of the imported merchandise multiplied by the applicable duty rates.

22. CBP, a division of the Department of Homeland Security, is responsible for assessing and collecting duties.

23. The importer of record shall use reasonable care in making and completing entry by filing with CBP the declared value, classification and rate of duty applicable to the merchandise, and other documentation or information, as necessary, to enable CBP to properly assess duties on the merchandise, collect accurate statistics with respect to the merchandise, and determine whether any other applicable requirement of law is met. See 19 U.S.C. § 1484.

24. All goods imported into the United States are taxed according to the Harmonized Tariff Schedule of the United States ("HTSUS") (codified at 19 U.S.C. § 1202).

25. Imported merchandise shall be appraised in accordance with methods prescribed in 19 U.S.C. § 1401a. The transaction value between the seller and importer plus or minus statutory additions or deductions under 19 U.S.C. § 1401a(b)(1) shall be the preferred method of valuation only if, among other requirements, the buyer and the seller are not related or the buyer and the seller are related but the transaction value is acceptable under 19 U.S.C. § 1401a(b)(2)(B). See 19 U.S.C. § 1401a(b)(2)(A).

26. Under 19 U.S.C. § 1401a(g)(1), the persons specified in any of the following shall be treated as persons who are related: (A) members of the same family, including brothers and sisters (whether by whole or half blood), spouse, ancestors, and lineal descendants; (B) any officer or director of an organization and such organization; (C) an officer or director of an organization and an officer or director of another organization, if each such individual is also an officer or director in the other organization; (D) partners; (E) employer and employee; (F) any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization; (G) two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.

27. Under 19 U.S.C. § 1401a(b)(2)(B), when determining the value on which duty will be assessed, the transaction value between a related buyer and seller is acceptable if an examination of the circumstances of the sale of the imported merchandise indicates that the relationship between such buyer and seller did not influence the price actually paid or payable; or if the transaction value of the imported merchandise closely approximates: (i) the transaction value of identical merchandise, or of similar merchandise, in sales to unrelated buyers in the United States; or (ii) the deductive value or computed value for identical merchandise or similar merchandise; but only if each value referred to in clause (i)

or (ii) that is used for comparison relates to merchandise that was exported to the United States at or about the same time as the imported merchandise.

28.  If the transaction value between a related buyer and seller under 19 U.S.C. § 1401a(b)(1) is not acceptable, CBP shall use: transaction value of identical merchandise provided for under 19 U.S.C. § 1401a(c); transaction value of similar merchandise provided for under 19 U.S.C. § 1401a(c); deductive value provided for under 19 U.S.C. § 1401a(d); computed value provided for under 19 U.S.C. § 1401a(e); value provided for under 19 U.S.C. § 1401a(b)-(e) with such methods being reasonably adjusted to the extent necessary to arrive at a value under 19 U.S.C. § 1401a(f).

29.  The documents required to be filed with CBP include, *inter alia*, (i) an entry summary (Form 7501) that declares the country of origin, the value of the merchandise and the applicable duty rate; and (ii) a commercial invoice that provides verification of the country of origin. See, e.g., 19 C.F.R. §§ 141.0a, 141.19(a), 141.81, 141.86(a), 142.3(a), 142.6(a).

30.  Each Form 7501 therefore contains an explicit declaration of compliance that each importer of record or the importer's authorized agent must sign which states, in pertinent part, that the signatory declares under oath that "the statements in the documents herein filed fully disclose to the best of [the signatory's] knowledge and belief the true prices, values, quantities, rebates,

drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. [The signatory] will immediately furnish to the appropriate CBP officer any information showing a different statement of facts." See 19 U.S.C. § 1485(a)(3) and CBP Form 7501 at Box 36.

31. CBP relies on importers to supply accurate information about imported merchandise, including the applicable HTSUS classification and country of origin.

32. Accordingly, misdeclaration of the relationship between the buyer and the seller and use of false invoices to avoid or decrease the obligation to pay the correct duties are actionable under the False Claims Act's reverse false claims provision. 31 U.S.C. § 3729(a)(1)(G) (formerly 31 U.S.C. § 3729(a)(7)).

## V. FACTS

33. LKA is an aluminum profile supplier with its principal place of business in Medley, FL. It was formed on February 4, 2016. See Disclosure Statement at 4.

34. Upon information and belief, LKA imports its merchandise from one single supplier in Ecuador, FISA.

35. Jacinto Vicente Kozhaya Simon is the Principle of FISA. He is also a member of LKA along with Ignacio Kozhaya Abuhayar, Antonio Kozhaya Jorge, Andres Kozhaya, and Gonzalo Kozhaya. Upon information and belief, Jacinto Vicente Kozhaya Simons, Ignacio Kozhaya Abuhayar, Antonio Kozhaya Jorge, Andres Kozhaya, and Gonzalo Kozhaya are members of the same family. See Disclosure Statement at 4, 5.

36. Therefore, LKA and FISA are related under 19 U.S.C. § 1401a(g)(1) because they are controlled by Jacinto Vicente Kozhaya Simons and his family members, respectively.

37. LKA purchases and imports aluminum products directly from its sister company, FISA.

38. AJ Freight provides customs brokerage services for FISA and LKA. AJ is well versed in the duties/fees related to importation of the merchandise.

39. AJ has firsthand information of the properly appraised value for the merchandise in transactions between unrelated parties.

40. After examining information on importations obtained through providing customs brokerage services, AJ concludes that FISA and LKA have evaded duties and fees through several schemes.

41. Upon information and belief, for the same products, FISA systematically sold or invoiced LKA lower than the prices it sold to unrelated U.S.

importers. See Disclosure Statement, Section III, Paragraph B(2). Therefore, FISA and LKA have been underpaying the United States around one thousand two hundred dollars per entry. See Id. This scheme is based on false statements as described below.

A.   *False Statement of the Relationship Between the Buyer and the Seller and False Invoicing*

42.   As stated above, LKA and FISA are related parties. According to Customs laws and regulations, LKA must declare the relationship between the parties by noting "Y" on its column 32 of the 7501.

43.   AJ is in possession of entry summaries where the relationship between LKA and FISA denied to CBP. A CBP inquiry would certainly result in appraisement at the value of identical merchandise provided for under 19 U.S.C. § 1401a(c), or of similar merchandise provided for under 19 U.S.C. § 1401a(c), i.e., adjusted to the prices paid by its unrelated U.S. buyers. If this were to happen, LKA would have been required to pay over one thousand more dollars in duties per entry.

44.   Concomitant with the false statement of relationship is false invoicing. Because FISA and LKA are related, FISA is incentivized and able to invoice LKA a lower value than it does others so that LKA will pay less duties, based on the artificially deflated invoice value. If FISA had invoiced LKA the same value as it

did other customers, the transaction value would be higher and LKA would have paid thousands of dollars more duty per entry. Based on the available documents, FISA deflated the prices by approximately one to two dollars per kilogram. See Id.

45. Due to CBP's ignorance of the relationship between FISA and LKA, it did not have any reason to question FISA's declared value or to find them suspicious.

46. The examination of entry summaries confirms that FISA and LKA typically undervalue their imported merchandise this way. See Disclosure Statement, Section III, Paragraph B(2).

47. CBP can verify AJ's claim by comparing a sample of LKA's Forms 7501 with FISA's unrelated buyers' Forms 7501 to verify that there are systematic differences in the values declared for identical or similar products. See Id.

*B. Estimation of Duty Underpayment*

48. In total, Relator estimates that Defendants have deprived the United States government of approximately $2.4 million in unpaid duties.

49. Relator handled 1,528 entries for which LKA was the importer of record from July 2016 to June 2022. Relator is informed that FISA and LKA also used another customs broker to perform customs clearance. From the trade data obtained from Import Genius, LKA imported at least 1,995 shipments in the preceding six years period from FISA.

50. Relator's records indicate that at least two false claims (i.e. two line items per entry summary) were made on at least one thousand nine hundred and ninety-five (1,995) entry summaries. Under the False Claims Act, Defendants are liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000 per line item violation. It is estimated that LKA makes 332 entries each year. Therefore, Relator estimates that FISA and LKA had made at least 3,990 counts of false claims in the preceding six years. The potential penalties range from $19.95 million to $39.90 million, in addition to $7.2 million (three times the damages).

## CAUSE OF ACTION

### *Count I - Violations of the False Claims Act – 31 U.S.C. § 3729(a)(1)(G) (Against All Defendants)*

51. AJ incorporates and realleges the relevant factual allegations in paragraphs 1 to 50 as if set forth fully herein.

52. As set forth above, all Defendants knowingly made, used, or caused to be made or used false records and/or statements to conceal, avoid, or decrease obligations to pay or transmit money or property, in the form of customs duties and fees, to the United States.

53. Defendants did so through FISA's preparation of false invoices that reflect a value lower than what it would sell to unrelated parties for the same

merchandise, false statements that include the nondisclosure of the related nature of the transactions between the parties.

54. The United States, unaware of the falsity of these claims, records, and statements made by these Defendants, and in reliance on the accuracy thereof, charged smaller duties and fees on the imported goods than were due.

55. These false claims were presented or caused to be presented with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false, as evidenced by the clear differences between values used in related and unrelated transactions.

56. AJ estimates that the duties and fees that have been willfully evaded by FISA and LKA total approximately $2,400,000.

57. The Government incurred damages in the form of losses relating to customs duties underpaid by Defendants because of their intentionally wrongful and fraudulent conduct.

58. The United States is entitled to three times the total damages sustained as a result of the Defendants' violations.

59. The United States is entitled to a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410) for each of Defendants' false claims, i.e., each misdeclared line item on every entry.

60. Under 31 U.S.C. § 3730(d)(l) and (2), Relators are entitled to reasonable attorney's fees and costs in addition to an award of 15 to 25 percent of the proceeds of the action or settlement of the claim if the Government proceeds with the action or an award of 25 to 30 percent of the proceeds of the action or settlement of the claim if the Government does not proceed.

### Count II - Conspiracy to Violate the False Claims Act – 31 U.S.C. § 3729(a)(1)(C)
### (Against All Defendants)

61. Relator incorporates and realleges the relevant factual allegations in paragraphs 1 to 50 as if set forth fully herein.

62. Relator seeks relief under Section 3729(a)(l)(C) of the False Claims Act.

63. Upon information and belief, Defendants Jacinto Vicente Kozhaya Simons, Principal of FISA and member of LKA, and his relatives Ignacio Kozhaya Abuhayar, Antonio Kozhaya Jorge, Andres Kozhaya, and Gonzalo Kozhaya, also members at LKA, entered into an agreement to have FISA make and LKA use false records or statements to avoid or decrease LKA's obligations to the U.S. Government in 2016 when LKA was formed. This is evidenced by entries dating back to 2018 that reflect these falsities.

64. Due to the related nature of the transactions between the FISA and LKA, FISA prepared invoices reflecting a value lower than what it sold to other customers for the same merchandise. LKA made false statements to the U.S. Government via CBP that include the deflated value as well as the nondisclosure of the related nature of the transactions between the parties.

65. The Government incurred an estimated $2,400,000 in damages in the form of losses relating to customs duties and fees underpaid by FISA and LKA because of their conspiracy to commit wrongful and fraudulent conduct.

66. As set forth above, because FISA, LKA and Kozhaya knowingly conspired to make, use, or cause to be made or used false records and/or statements to conceal, avoid, or decrease obligations to pay or transmit money or property in the form of customs duties and fees, to the United States, the Government incurred losses relating to customs duties underpaid by FISA and LKA as a result of their wrongful and fraudulent conduct.

67. The United States is entitled to three times the total damages, approximately $7.2 million, sustained as a result of the FISA, LKA, and Kozhaya's violations.

68. The United States is entitled to a civil penalty of not less than $5,000.00 and not more than $10,000.00, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 Note; Public Law 104-410) for

each of FISA and LKA's three thousand nine hundred and ninety (3,990) false claims.

69. Under 31 U.S.C. § 3730(d)(l) and (2), Relators are entitled to reasonable attorney's fees and costs in addition to an award of 15 to 25 percent of the proceeds of the action or settlement of the claim if the Government proceeds with the action or an award of 25 to 30 percent of the proceeds of the action or settlement of the claim if the Government does not proceed.

## PRAYER FOR RELIEF

For the foregoing reasons, AJ, acting as Relator on behalf of the United States, respectfully requests this Court finds that Defendants have damaged the United States Government as a result of their unlawful conduct pursuant to the False Claims Act. AJ prays that judgment be entered against Defendants for all applicable damages, including, but not limited to, the following:

a. Actual damages in an amount equal to the duties and fees owed and not paid by Defendants;

b. Civil penalties in an amount equal to three times the actual damages suffered by the Government;

c. Civil penalty for each false claim as set forth in the False Claims Act;

d. Award to the Relator in an amount this Court decides is reasonable for collecting the civil penalty and monetary damages by pursuing this

matter. By statute, the award shall not be less than 15% or more than 25% of the proceeds of this action or the settlement of any such claim if the Government intervenes in the action, and if the Government declines to intervene in the action, the award shall not be less than 25% or more than 30%;

e. Award of the Relator's costs in this action, including attorneys' fees pursuant to 31 U.S.C. § 3730(d),

f. Pre-judgment and post judgment interest.

g. All other relief on behalf of the Relator and/or the United States Government to which they may be entitled at law or equity.

Dated: July 5, 2023

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
sliang@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Tel: 850-893-0670
*Attorney for AJ Freight Services, Inc.*